UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

LI ZHANG                                                                  PLAINTIFF

vs.                                                           Civil No. 1:23-cv-71-GHD-DAS

MISSISSIPPI STATE UNIVERSITY; et al.                              DEFENDANTS

### <u>OPINION</u>

Presently before the Court is Defendants Mississippi State University ("MSU"), Mississippi Board of Trustees of State Institutions of Higher Learning ("IHL"), Mark Keenum, and Alfred Rankins, Jr.'s (collectively "Defendants") Motion for Summary Judgment [Doc. No. 145] requesting this Court dismiss all Plaintiff Li Zhang's ("Plaintiff") claims against them. After careful consideration, the Court finds Defendants' motion should be granted.

### I.       Background

The plaintiff in this matter is Dr. Li Zhang ("Plaintiff"), a formerly tenured Chinese American professor of engineering at Mississippi State University in what is now known as the School of Civil and Environmental Engineering [155]. Plaintiff brings several claims against Defendants Mississippi State University ("MSU"); the Board of Trustees, Mississippi Institutions of Higher Learning ("IHL"); Dr. Mark Keenum; and Dr. Alfred Rankins, Jr.: Dr. Keenum is president of MSU—a public institution of higher learning in Starkville, Mississippi—while Dr. Rankins is commissioner of the IHL, "the state constitutional governing body of [MSU]" [92; 155].

Plaintiff contends he faced several challenges outside the workplace while employed at MSU. He has had several corrective surgeries for back, knee, and vision problems, and he has "significant caretaking responsibilities for his son" who was "diagnosed with a rare genetic

mutation (SCN2A) that causes autism and severe developmental delays" [92; 155]. Plaintiff's son's medical needs required Plaintiff and his family to relocate from Starkville, Mississippi, to Brandon, Mississippi; however, Plaintiff continued his employment with MSU [155]. Plaintiff now alleges MSU denied or effectively denied his leave requests to care for his son and his personal health; MSU disputes that allegation.

In addition, Plaintiff complains of several adverse actions MSU took against him professionally. He alleges his "pay was comparatively worse than other white professors with similar tenure, rank, and workloads;" he was "passed over" for desirable positions in favor of less qualified white professors; and he was given higher teaching loads than other white professors [92]. Plaintiff claims issues in the workplace began when Dr. Isaac Howard became his department head in 2021, but the friction escalated at the end of 2021, when Plaintiff notified his supervisors of and requested leave for back surgery scheduled for December 1, 2021 [155]. This leave was allegedly not approved until January 27, 2022, *after* Plaintiff had recovered and was cleared to return to work [155].

Despite this, Plaintiff arranged for the administration of his final exams and then graded them while recovering from surgery [155]. Once Plaintiff submitted the grades, however, MSU allegedly changed students' course grades based on student complaints without notifying Plaintiff [155]. Through a letter written by counsel, dated February 2, 2022, Plaintiff notified MSU he felt the institution was violating his rights [155]. Then, on March 1, 2022, Plaintiff filed his first EEOC charge [154-19],[1] for which Plaintiff alleges MSU took significant adverse employment actions against him in retaliation [155]. This alleged retaliation came to a head when Plaintiff was notified MSU intended to terminate him through a letter dated February 14, 2024, for "(1) [failing] to teach

---

[1] This charge was later amended on August 18, 2022 [154-19].

2

in accordance with MSU standards, (2) unsatisfactory research performance, and (3) contumacious conduct and malfeasance" [148].

Plaintiff immediately appealed to the Promotion and Tenure Committee—a panel of MSU faculty who reviews dismissals—requesting a hearing that occurred from June 3 through June 5, 2025 [148]. The faculty panel decided cause existed for Plaintiff's termination on June 19, 2025, prompting Provost David Shaw to recommend termination to President Keenum who accepted that recommendation [148]. Plaintiff then appealed to IHL, who affirmed MSU's termination decision in September 2025 [148]. The EEOC sent Plaintiff his first right-to-sue letter on March 2, 2023, after which he initiated this action [92; 148]. He then received two more right-to-sue letters on November 15, 2024, and November 17, 2025 [92].

## II. *Standard of Review*

This Court grants summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The summary judgment movant bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id*. at 323. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers

to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324; *Littlefield v. Forney Indep. Sch. Dist*., 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc*., 61 F.3d 313, 315 (5th Cir. 1995). When the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

### III.    *Analysis and Discussion*

Before this Court can analyze this case's merits, it must first address issues regarding jurisdiction. *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 415 (5th Cir. 2023) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). Indeed, "this [C]ourt has an independent responsibility to address questions of subject-matter jurisdiction, even when parties 'overlook or elect not to press' the issue." *Kumar v. Panera Bread Co.*, No. 23-20178, 2024 WL 1216562, at *2 (5th Cir. March 21, 2024) (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011)) (other citations omitted).

Plaintiff brings two sets of claims broken down into direct claims and reinstatement claims. The direct claims are brought directly against the institutional defendants, MSU and IHL, while the reinstatement claims are brought indirectly against the institutional defendants through the *Ex parte Young* exception to Eleventh Amendment immunity. "The Eleventh Amendment generally bars private individuals from suing states in federal court." *Harrison v. Young*, 48 F.4th 331, 337 (5th Cir. 2022) (citing *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)). This

4

immunity protects "any entity deemed an arm or alter ego of the state," as are the institutional defendants in this case. *McLean v. Miss. State Univ.*, Civ. Action No. 1:19-cv-00122-GHD-RP, 2020 WL 3980026, at *2 (N.D. Miss. July 14, 2020).

Eleventh Amendment immunity also extends to "state officials sued in their official capacity" because such a suit "is not a suit against the official but rather is a suit against the official's office." *Mclean*, 2020 WL 3980026 at *2 (quoting *Garrett*, 526 U.S. at 363 and citing *Hafer v. Melo*, 502 U.S. 21, 25 (2000); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)) (internal quotation marks omitted). In other words, "[o]fficial capacity suits are really suits against the governmental entity." *Eriakha v. Univ. of Miss.*, No. 3:25-cv-226, 2026 WL 1866718, at *5 (N.D. Miss. June 29, 2026) (quoting Goodman v. Harris Cnty., 571 F.3d 388, 396 (5th Cir. 2009)) (internal quotation marks omitted). However, an exception to this immunity—called the *Ex parte Young* exception—applies "when a plaintiff seeks injunctive relief to enjoin ongoing violations of federal law." *Harrison*, 48 F.4th at 337 (citing *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254-56 (2011); *Ex parte Young*, 209 U.S. 123, 156 (1908)). "A state official violating federal law can be sued for prospective relief." *Id*. (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). As such, to determine "whether the *Ex parte Young* exception applies, the district court 'need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Eriakha v. Univ. of Miss.*, No. 3:25-cv-226, 2026 WL 50146, at *4 (N.D. Miss. Jan. 7, 2026) (quoting *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2010)).

Although MSU and IHL do not "press the issue," this Court notes at the outset it has limited subject-matter jurisdiction over these defendants because of their Eleventh Amendment immunity. To clarify, the institutional defendants *did* raise the immunity defense in their Motion for Partial

Dismissal [100], but they did so only regarding claims previously dismissed in two Agreed Orders [18; 58]. The institutional defendants failed to argue this immunity applies equally to *all* claims brought against them except Plaintiff's FMLA family-care provision claim, Rehabilitation Act claim, ADA claim, and corresponding retaliation claims. Despite this, all Plaintiff's claims brought directly against the institutional defendants must be dismissed except Plaintiff's FMLA family-care leave claim, Rehabilitation Act claim, ADA claim, and corresponding retaliation claims.

As for Plaintiff's claims brought pursuant to the *Ex parte Young* exception and whether it applies, Plaintiff alleges Defendants' failure to reinstate him is an ongoing violation of the FMLA, ADA, ADEA, and Title VII—all federal laws. He sues the individual defendants in their official capacities seeking reinstatement, and the Fifth Circuit has found reinstatement "an acceptable form of prospective relief that may be sought through *Ex parte Young*." *Id*. at 338 (quoting *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 322 (5th Cir. 2008)) (internal quotation marks omitted). Therefore, this Court has jurisdiction to hear Plaintiff's reinstatement claims brought for alleged violations of the FMLA's self-care provision, the Fourteenth Amendment's due process clause, and Title VII, but Plaintiff's remedy is limited to reinstatement on these claims. Though Plaintiff only brings his ADA claim as a reinstatement claim, the Court will later explain the ADA abrogates sovereign immunity; therefore, Plaintiff's remedy will not be limited to reinstatement on that claim.

### A. FMLA Family-Care Claim

Beginning with Plaintiff's family-care leave claim, Congress properly abrogated and "acted constitutionally in making the States amenable to suit" under the FMLA's family-care provision. *Sullivan v. Tex. A&M Univ. Sys.*, 986 F.3d 593, 596 (5th Cir. 2021) (citing *Nev. Dep't of*

*Hum. Res. v. Hibbs*, 538 U.S. 721, 724-25 (2003)). Therefore, Plaintiff can bring such a claim against his *employer*, Defendant MSU.[2]

Turning to the substance of this claim, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's right to take FMLA leave. 29 U.S.C. § 2615(a)(1). The FMLA's family-care provision entitles eligible individuals to leave "[i]n order to care for [their] spouse, or a son, daughter, or parent . . . if [they have] a serious health condition." 29 U.S.C. § 2612(a)(1)(C). Pursuant to this provision, Plaintiff alleges MSU "denied or delayed" his leave on several occasions "to care for [his son] C.Z." [155]. To prove his FMLA rights were violated, Plaintiff must show

> (1) he was an eligible employee, (2) his employer was subject to the FMLA, (3) he was entitled to the FMLA leave, (4) he notified his employer of his intent to take FMLA leave, (5) his employer interfered with his exercise of FMLA rights, and (6) he was prejudiced as a result.

*Park v. Direct Energy GP, L.L.C.*, 832 F. App'x 288, 293 (5th Cir. 2020) (citing *Tatum v. S. Co. Servs.*, 930 F.3d 709, 713 (5th Cir. 2019); *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)). Defendants make no argument regarding elements one, two, three, and four, so the Court finds they are satisfied for the purposes of this motion.[3] The Court then need only determine whether MSU interfered with Plaintiff's exercise of his FMLA rights and whether Plaintiff was prejudiced because of that interference.

---

[2] The Agreed Order [18] already established IHL is not Plaintiff's employer for Title VII purposes only, but the Court now adjudicates IHL is not Plaintiff's employer for any purpose. Therefore, Plaintiff cannot bring any of the claims set forth below against IHL or Defendant Rankins. They must be dismissed as parties to this suit.

[3] "Companies who employ 50 or more individuals within a 75-mile radius are subject to the FMLA's requirements." *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 526 (5th Cir. 2021) (citing 29 U.S.C. § 2611(2)(B)(ii)). Additionally, "the employee requesting FMLA leave must have worked 1,250 hours with that employer during the previous 12-month period." *Id.* (citing 29 U.S.C. § 2611(2)(A)(ii)).

Plaintiff's wife corroborates his testimony that Plaintiff helped with his son's care and that his work sometimes affected that care [152-6, pp. 47-48]. Plaintiff points to four specific instances where he claims MSU either denied or delayed his FMLA leave requests to care for his son:

- Plaintiff "was required to take leave for [his son's] medical appointments . . . [and] Dr. Howard would not arrange for [Plaintiff's] classes to be covered, so [Plaintiff] had to make up the classes later.

- After his son was exposed to COVID-19, Plaintiff requested leave from Dr. Howard who allegedly "delayed approval of this request . . . effectively forc[ing] [Plaintiff] to teach the class anyway."

- Dr. Howard and Dr. Morrison allegedly "delayed in approving [Plaintiff's] request for leave to care for [his son]," and as a result, Plaintiff "drove from Brandon to Starkville with [his son] . . . The leave was only approved after" Plaintiff arrived in Starkville.

- After Plaintiff requested leave for January 2, 2024, through January 5, 2024, to care for his son, Dr. Morrison allegedly "asked [Plaintiff] to withdraw this request because classes were not in session so no leave would be granted."

[155]. Plaintiff argues this reaches the interference level necessary to satisfy the above test's fifth element. Defendants characterize these instances as "[t]emporary administrative delays, requests for clarification, [and] disputes about the manner in which leave is taken," while arguing these "do not constitute actionable interference absent proof of prejudice" [148]. The Court agrees with Defendants' characterization after careful review of the record [154-22].

The instances listed above are a far cry from the employer's actions in *Forbes v. Unit Texas Drilling, L.L.C.*, 526 F. App'x 376, 379 (5th Cir. 2013). There, "while [the plaintiff was] caring for his post-operative wife," the plaintiff's supervisor called and threatened the plaintiff "with termination if he did not immediately return to work." *Id.* The plaintiff later called his employer's human resources department, was notified he had not been fired, and after completing the appropriate paperwork, was approved for FMLA leave. *Id.* at 378. The Fifth Circuit found the supervisor's threatening phone call did not reach the necessary level of interference to prove an

8

FMLA claim. *Id*. at 379. If an active threat of termination fell below the required interference standard, Plaintiff's listed allegations must also fall below that standard.

Additionally, MSU did not require Plaintiff to work from home while on FMLA leave as a condition of continued employment. *Park*, 832 F. App'x at 294 (quoting *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 210 (5th Cir. 2018)) ("Giving employees the option to work while on leave does not constitute interference with FMLA rights so long as working while on leave is not a condition of continued employment."). Plaintiff also refused on several occasions to follow MSU policy regarding the taking of and preparation for FMLA leave [154-22]. 29 U.S.C. § 2612(e)(2)(A); *Acker v. Gen. Motors, LLC*, 853 F.3d 784, 789 (5th Cir. 2017).

Even if Plaintiff had shown a genuine dispute of material fact existed regarding interference, he fails to show prejudice as a matter of law, and states only "the jury could infer interference . . . and that [Plaintiff] suffered prejudice from that interference" [155] which is nothing more than a "conclusional allegation" or "unsupported assertion." *McClure*, 490 F. App'x at 667. No genuine issue of material fact exists regarding Plaintiffs' FMLA family-care provision claim against his employer, MSU, and MSU is entitled to judgment as a matter of law. Therefore, this claim shall be dismissed.

## B. FMLA Self-Care

The Court pauses to clarify its reasoning for analyzing Plaintiff's FMLA self-care claim. As discussed above, two Agreed Orders [18; 58] and this Court's opinion granting two motions to dismiss [169; 170] clarified which claims were still pending in this case. However, Plaintiff has amended his complaint twice [49; 92]. The Agreed Orders [18; 58] did not address the later added individual defendants, and the individual defendants' previous motion to dismiss [102] was narrowly tailored to dismiss any claim for monetary damages prohibited under the *Ex Parte Young*

exception. Because *Ex Parte Young* applies and neither the Agreed Orders [18; 58] nor this Court's ruling on the motions to dismiss [169; 170] address Plaintiff's FMLA self-care claim on the merits, the Court addresses it below. This, however, presents a difficult issue for the Court because Defendants do not substantively argue this claim in their briefing in support of their motion for summary judgment [148; 161] but merely state "[t]he Court previously dismissed Zhang's self-care leave claims on immunity grounds," citing the previously discussed Agreed Order [18] and acknowledging Plaintiff "now reasserts those claims . . . through a claim for reinstatement against Keenum and Rankins" [148, p. 22 n.16]. This presents no objection to the reassertion, so the Court finds the self-care claims must be analyzed in the context of reinstatement.

The elements for a self-care interference claim are the same as those used to prove a family-care interference claim; specifically, Plaintiff must show

> (1) he was an eligible employee, (2) his employer was subject to the FMLA, (3) he was entitled to the FMLA leave, (4) he notified his employer of his intent to take FMLA leave, (5) his employer interfered with his exercise of FMLA rights, and (6) he was prejudiced as a result.

*Park*, 832 F. App'x at 293. Defendants make no substantive argument regarding elements one, two, three, and four, so the Court finds they are satisfied for the purposes of this motion. Relevant to this claim, Plaintiff alleges MSU intentionally prevented him from taking leave for back surgery.

Plaintiff emailed his supervisors on November 23, 2021, notifying them he was scheduled for back surgery on December 1, 2021, and included the doctor's post operation instructions [148; 155]. Final exams were scheduled for Plaintiff's classes on December 3 and 6 [148]. Prior to his surgery, Plaintiff's supervisors requested Plaintiff take steps to have his final exams proctored and have final grades submitted before the December 13, 2021, deadline or submit "[a] plan . . . to enter final grades for each student in all classes" [145-19, p. 15]. Plaintiff was also notified at that time any extension to his final grade submission deadline was not possible [*Id.*]. This

10

correspondence occurred on November 23, 2021, eight days prior to his surgery [*Id.*]. Plaintiff's supervisors reached out two more times requesting information from Plaintiff before his surgery and even reminded him to formally request his FMLA leave, but they received no response [145-19, pp. 13-14]. Ultimately, the supervisors arranged for proctors to administer Plaintiff's exams [145-21; 145-19]. The Court notes Plaintiff did not submit his formal FMLA leave request until 1:57 a.m. *the morning of his surgery* [145-20, p. 17].[4]

In the meantime, Plaintiff's supervisors were having internal discussions with other MSU administrators [145-20]. Plaintiff specifically points to statements the Court admittedly finds troubling [155]. Jason Keith, one of Plaintiff's supervisors, sent an email seeking "guidance on a situation," writing, "I would like to see if we can deny [Plaintiff's] request for surgery and ask him to administer the final and submit grades" [145-20, p. 9]. MSU's human resources director immediately responded, "Unfortunately, we cannot deny medical leave for an employee," to which Keith responded "defer might be a better word to use" with a request for clarification on the leave request procedure [*Id.* at 8]. After receiving some clarification, Keith then asks MSU's provost if he has "any advice from an academic affairs standpoint," to which the provost responds:

> There's been a long history of issues here, and we need to aggressively do everything we can to rectify this situation. He's been repeatedly working the system to his advantage. Leslie, I'd like for you to work with Jason and Isaac to develop an action plan to stop this behavior.

[*Id.* at 7-8]. The Court already acknowledged this is troubling language, but when read in context, the Court finds it does not rise to the level of interference necessary to prove Plaintiff's claim. Rather, it shows MSU's internal safeguards working to protect Plaintiff's right to FMLA leave. After all, he still received his leave despite Keith's misguided question.

---

[4] Plaintiff had to amend this leave request multiple times before it was finalized due to errors in the request [148, p. 8 n.7].

After the surgery, the discussion between Plaintiff and his supervisors turned to grading [145-21]. Plaintiff's supervisors had requested Plaintiff's grading plan prior to his surgery— Plaintiff never provided one [*Id.*; 145-19]. Despite the administration's efforts to help Plaintiff prepare his classes for his FMLA leave, Plaintiff either ignored or outright refused to follow university policies or instruction from his superiors. Plaintiff was required to comply with MSU's "usual and customary notice and procedural requirements for requesting leave." *Acker*, 853 F.3d at 789 (quoting 29 C.F.R. § 825.303(c)) (internal quotation marks omitted). He failed to do so; therefore, Plaintiff must show "unusual circumstances prevented him from following [MSU] procedures." *Id*. Plaintiff does not show unusual circumstances existed; therefore, no genuine issue of material fact exists regarding Plaintiff's self-care interference claim, and MSU is entitled to judgment as a matter of law.

### C. Rehabilitation Act and ADA Claims

Plaintiff's Complaint [92] alleges violations of the Rehabilitation Act and the ADA. The Fifth Circuit has found a "state defendant's acceptance of federal funds serves to waive any Eleventh Amendment immunity as to a claim under § 504 of the Rehabilitation Act." *Eriakha v. Univ. of Miss.*, No. 3:25-cv-226, 2026 WL 1866718, at *5 (N.D. Miss. June 29, 2026) (citing *Miller v. Tex. Tech Univ. Health Scis. Ctr.*, 421 F.3d 342, 348 (5th Cir. 2005)). Additionally, "Title II of the ADA validly abrogates state sovereign immunity when the state's conduct actually violates the Fourteenth Amendment." *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021) (citing *United States v. Georgia*, 546 U.S. 151, 159 (2006)).

Claims under the Rehabilitation Act and the ADA are subject to the *McDonnell Douglas* burden-shifting framework, *Houston v. Tex. Dep't of Ag.*, 17 F.4th 576, 585 (5th Cir. 2021); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under that framework, Plaintiff

must first "establish a *prima facie* case." *Jones v. Gulf Coast Rest. Group, Inc.*, 8 F.4th 363, 368 (5th Cir. 2021). If accomplished, "the burden then shifts to [Defendant] to articulate a legitimate reason for the adverse employment action," and after providing such, "the burden then shifts back to [Plaintiff] to show that the reason is a pretext." *Id*. Claims brought pursuant to the Rehabilitation Act and the ADA "are judged under the same legal standards" and provide for the same remedies, so Plaintiff need only prove the elements of one *prima facie* test; that is:

> (1) that [he] is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.

*Herbert v. St. James Parish Sch. Bd.*, 177 F.4th 630, 637 (5th Cir. 2026) (quoting *Carter ex rel. Carter v. City of Shreveport*, 144 F.4th 809, 813 (5th Cir. 2025)). These elements match neither Plaintiff's nor Defendants' cited *prima facie* elements.

Defendants argue the proper test for Plaintiff's Rehabilitation Act and ADA claims require him to show he "(1) had a disability or was regarded as such, (2) was qualified for the job at issue, and (3) was subject to an adverse employment decision <u>solely</u> by reason of his disability" [148].[5] Plaintiff provides the Court a similar standard for his Rehabilitation Act claim, but he does not apply it to his ADA claim. Plaintiff instead argues the standard to prove an ADA claim is a lower, motivating-factor causation standard, requiring he prove "(1) that he had or was regarded as disabled, (2) that he was qualified for his job, and (3) that he 'was subject to an adverse

---

[5] Defendants cite several cases in support of this test: *Harmon v. Collier*, 158 F.4th 595, 608-09 (5th Cir. 2025); *Dabbasi v. Motiva Enters., LLC*, 107 F.4th 500, 508 (5th Cir. 2024); *January v. City of Huntsville*, 74 F.4th 646, 652-53 (5th Cir. 2023); *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 697 (5th Cir. 2014); and *Cohen v. Univ. of Tex. Health Sci. Ctr.*, 557 F. App'x 273, 277 (5th Cir. 2014).

employment decision' because of his disability" [155].[6] The chosen test is immaterial in the case *sub judice* because Plaintiff cannot carry his burden on any of them.

Plaintiff complains Defendants violated the Rehabilitation Act and ADA "by terminating [him] based on his age"[7] and provides a significant number of factual allegations regarding these claims—most of them are irrelevant to the issue [92]. The relevant allegations are scant, at best, and include the Defendants' failure to approve Plaintiff's self and family-care leave and rejection of Plaintiff's request "for a motorized raising desk to accommodate his back pain" [92]. The Defendants, for their part, argue Plaintiff fails to show "his back pain is sufficient to constitute a disability" and that his disability was the sole reason for any adverse action taken by Defendants [161]. The parties' arguments center on Plaintiff's back pain, so the Court analyzes his claims with only that ailment in mind.

"The ADA defines a 'disability' as '(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'" *Hacker v. Cain*, 759 F. App'x 212, 215 (5th Cir. 2018) (quoting 42 U.S.C. § 12102(1)). "To be substantially limited means to be unable to perform a major life activity that the average person in the general population can perform, or to be significantly restricted in the ability to perform it." *Id*. at 216 (quoting *Hail v. King*, 642 F.3d 492, 500 (5th Cir. 2011) (cleaned up). The ADA specifically categorizes "walking" as a major life activity. 28 C.F.R. § 35.108(c)(1)(i). Plaintiff specifically alleges "he could not walk even one hundred feet without breaks" taking "several breaks from the engineering building to the dean's

---

[6] Plaintiff cites two cases in support of this standard and test: *Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 248 (5th Cir. 2025) and *Harmon v. Collier*, 158 F.4th 595, 608 (5th Cir. 2025).

[7] The Court notes neither the Rehabilitation Act nor the ADA protects against discrimination based on age, that is covered by the ADEA which is discussed later in this opinion.

office" [155]. The Court finds the effects on Plaintiff's walking from his chronic back pain meets the ADA's standard for disability.[8]

Despite his success on the disability element, Plaintiff cannot show he was subject to an adverse employment action because of his disability under *either* the solely or motivating factor standard. Most of the factual evidence Plaintiff uses to support his ADA and Rehabilitation Act claims is irrelevant to the issues. As for the alleged failure to approve Plaintiff's FMLA leave, the Court has already addressed those claims on the merits and notes again here it was approved, so it provides no real support for those claims. This leaves a potential failure-to-accommodate theory claim based on a single instance when Defendants allegedly rejected Plaintiff's request for a standing desk. Defendants deny that allegation [148, p. 28]. Failure-to-accommodate-based discrimination claims require a showing of *intentional* discrimination. *Carter*, 144 F.4th at 813. Even if Plaintiff did prove Defendants denied his request for a standing desk, that alone is simply too little evidence to show this Court he was *intentionally* discriminated against because of his disability. McClure, 490 F. App'x at 667 (holding "a nonmovant may not overcome the summary judgment standard with . . . presentation of only a scintilla of evidence"). Because Plaintiff fails to make the proper *prima facie* showing, the Court need not analyze the rest of the *McDonnell Douglas* burden shifting framework. Plaintiff's ADA and Rehabilitation Act discrimination claims must be dismissed.

### D. Title VII Claim

Plaintiff next brings a racial discrimination claim pursuant to Title VII which is also subject to the *McDonnell Douglas* burden-shifting framework. *Jones*, 8 F.4th at 368. To properly establish a *prima facie* racial discrimination case, Plaintiff must show he "'(1) is a member of a protected

---

[8] Plaintiff likely meets subsection B's record of impairment definition as well, but the Court does not conduct the full analysis due to its redundancy.

15

group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [his] protected group.'" *Harrison v. Brookhaven School Dist.*, 82 F.4th 427, 429 (5th Cir. 2023) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)). Plaintiff's Title VII claim is a nonstarter because he fails at the *prima facie* stage. Plaintiff cannot show he was replaced by someone outside his protected group because his courses are now taught by a professor of Turkish descent, a Chinese professor, and a white professor who Plaintiff previously recommended to teach some of his courses [145-2]. As such, Plaintiff's Title VII discrimination claim must be dismissed because no genuine issue of material fact exists regarding that claim, and MSU is entitled to judgment as a matter of law.

### E. ADEA Claim

Plaintiff next brings an age discrimination claim pursuant to the Age Discrimination in Employment Act ("ADEA") which too is subject to the *McDonnell Douglas* burden-shifting framework. *Prevost v. City of Houston*, No. 25-20264, 2026 WL 908538, at *2 (5th Cir. Apr. 2, 2026). Under the ADEA, the "ultimate burden of persuasion is on the plaintiff to prove that age was the *but-for* cause of the challenged employer decision." *Inmon v. Mueller Copper Tube Co., Inc.*, 757 F. App'x 376, 380 (5th Cir. 2019) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178-79 (2009) (internal quotation marks omitted) (emphasis added). "Proving that age was a 'motivating factor' for the decision is not enough." *Ford-Kee v. Miss. Valley State Univ.*, No. 4:23-cv-107-SA-JMV, 2024 WL 5150647, *11 (N.D. Miss. Dec. 17, 2024) (citing *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019)). The *prima facie* case for an ADEA discrimination claim consists of four elements and requires a plaintiff to prove

> (1) [he] was discharged; (2) [he] was qualified for the position; (3) [he] was within the protected class at the time of discharge; and (4) [he] was either i) replaced by

someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of [his] age.

*Prevost*, 2026 WL 908538, at *3 (quoting *Dabbasi*, 107 F.4th at 505).

By not providing any argument regarding his replacement, Plaintiff essentially concedes the first two possible methods of satisfying the fourth element. Instead, Plaintiff argues he satisfies the catchall provision—that he was otherwise discharged because of his age—because he "may satisfy [the] fourth element by showing [he] 'did not violate the work-rule for which he was disciplined'" [155].[9] Defendant MSU claims it terminated Plaintiff because of "(1) his failure to teach in accordance with MSU standards, (2) unsatisfactory research performance, and (3) contumacious conduct and malfeasance" [148]. Plaintiff points to several work rules "he did not violate:" he timely submitted grades in December 2021; his traffic counting assignment was not unsafe; and "[h]e did not contact congressional delegation or ask other to do so" [155]. He does not support any of these with citations to the record, however, as required by Rule 56. See also, *McClure*, 490 F. App'x at 667. After an extensive search of the record, it is clear to the Court Plaintiff had an extensive history of performance issues, some of which occurred prior to any potential civil rights violations discussed in this case. Because Plaintiff fails to provide the Court with record evidence supporting his position that a genuine issue of material fact exists regarding the fourth element of this claim, he cannot prove his *prima facie* case for his ADEA discrimination claim; therefore, this claim must be dismissed.

### F. Retaliation Claims

Plaintiff brings retaliation claims—which are also subject to the *McDonnell Douglas* burden shifting framework—for participating in activities protected by the FMLA, ADA,

---

[9] In support of this, Plaintiff cites *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995); *Porter v. Siemens Indus., Inc.*, No. 3:19-CV-109, 2020 WL 13682783, at *2 (S.D. Miss. June 30, 2020); and *Harkness v. Bauhaus U.S.A., Inc.*, 86 F. Supp. 3d 544, 556 (N.D. Miss. 2015).

Rehabilitation Act, ADEA, and Title VII. To prove a claim for retaliation under any of those statutes, a plaintiff must show he (1) engaged in a protected activity; (2) suffered an adverse action; and (3) there is a causal connection between the two. See *Wilson v. City of Southlake*, Civ. Action No. 4:16-cv-0057, 2021 WL 4936251, at *11 (N.D. Tex. July 9, 2021) (analyzing retaliation for ADA and Rehabilitation Act); *Moye v. Tregre*, No. 22-30341, 2024 WL 65424, *3 (5th Cir. Jan. 5, 2024) (citing *Hudson v. Lincare, Inc.*, 58 F.4th 222, 231 (5th Cir. 2023)) (analyzing retaliation for Title VII); *Prevost*, 2026 WL 908538, at *3 (analyzing retaliation for ADEA); *Way v. City of Missouri City*, 133 F.4th 509, 526 (5th Cir. 2025) (analyzing retaliation for FMLA).

The record makes clear Plaintiff participated in protected activity and suffered an adverse employment action. Specifically, Plaintiff had an attorney send correspondence to the MSU's general counsel about potential employment and discrimination statute violations, and he filed an EEOC charge [155]. Defendants do not contest this. The Court therefore finds Plaintiff satisfies the first element of his *prima facie* retaliation case. As for the adverse action under the second element, "dismissal constitutes an adverse action," and Defendants terminated Plaintiff's employment [148; 155]. *Way*, 133 F.4th at 522 (quoting *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)) (cleaned up). Plaintiff argues he suffered adverse employment actions other than his termination, pointing to the Supreme Court's definition of adverse employment action in *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 359 (2024): "[a plaintiff] need only show some injury respecting [his] employment terms and conditions." Plaintiff points to many allegedly adverse actions he claims satisfy this standard, including:

> (1) changing the grades assigned by [Plaintiff] in Fall 2021, (2) stripping [Plaintiff] of his teaching responsibilities in Spring 2022 . . . , (3) sabotaging the UTC proposal led by [Plaintiff], (4) cancelling the extension for [Plaintiff's] MDOT project, (5) issuing pre-determined and poor annual review for 2021 and 2022, and (6) terminating [Plaintiff].

18

[155]. It is unnecessary for the Court to determine at this time whether these other actions can be classified as adverse because Plaintiff's termination satisfies the second element; therefore, the only element remaining at issue is whether a causal connection existed between Plaintiff's engagement in protected activity and his termination.

Plaintiff wholly fails to satisfy the third element because he does nothing more than recite factual allegations without pointing to record evidence as required under Rule 56: "A party asserting that a fact . . . is genuinely disputed must support the assertion *by citing to particular parts of materials in the record*." Fed. R. Civ. P. 56(c)(1); see also, *McClure*, 690 F. App'x at 667. Plaintiff points to nothing in the record validly showing a causal connection between his engagement in protected activity and any adverse action. Instead, he cites materials that are *not* adverse employment actions or makes *unsupported* allegations regarding what could be regarded as adverse actions. *McClure*, 690 F. App'x at 667. Plaintiff also fails to provide this Court with any real temporal proximity analysis, providing neither dates nor citations to documents containing those dates. What is more, even if Plaintiff's analysis provided the necessary citation to the record, he makes little to no analysis concerning the *McDonnell Douglas* pretext stage. Without that analysis, Plaintiff cannot properly rebut Defendants' argument for summary judgment regarding the retaliation claims; therefore, they must be dismissed.

### G. Due Process Claim

Plaintiff supports his claim for reinstatement pursuant to *Ex parte Young* with alleged violations of his Fourteenth Amendment due process rights. Specifically, Plaintiff alleges Defendants deprived him of protected property interests by not providing him with a constitutionally sufficient notice or hearing. Plaintiff appealed to IHL who affirmed MSU's termination decision, so this claim extends not only to Plaintiff's employer, MSU, but also IHL and Defendants Rankins. "The Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.'" *Jones v. La. Bd. Of Sup'rs of Univ.*

19

*of La. Sys.*, 809 F.3d 231, 236 (5th Cir. 2015) (quoting U.S. Const. amend. XIV, § 1). In due process cases, the process due "is a function of the context of the individual case." *Id*. In the context of this case, professors have the minimum right to:

> (1) be advised of the cause for his termination in sufficient detail so as to enable him to show any error that may exist; (2) be advised of the names and the nature of the testimony of the witnesses against him; (3) a meaningful opportunity to be heard in his own defense within a reasonable time; and (4) a hearing before a tribunal that possesses some academic expertise and an apparent impartiality toward the charges.

*Levitt v. Univ. of Tex. at El Paso*, 759 F.2d 1224, 1228 (5th Cir. 1985) (citing *Ferguson v. Thomas*, 430 F.2d 852, 856 (5th Cir. 1970)).

The record is clear: Defendants did not violate Plaintiff's due process rights. Plaintiff was advised of the causes for his termination, he was given the names and nature of testimony of the witnesses prior to his hearing, he was given an impartial hearing that allowed him to put forth his own defense, and he was even permitted to add more material to his defense after the hearing, in conflict with normal procedure [146-6; 147-2]. Despite such a clear record, however, Plaintiff argues several "irregularities" existed concerning his termination procedure:

- Notification of the hearing to the committee was untimely, causing members of the committee to miss the hearing;
- He had no access to his university OneDrive, Banner, and email accounts;
- The committee members used MSU's general counsel as a "confidential advisor;" and
- Plaintiff's termination was already determined before the committee hearing.

[155]. These allegations do not help Plaintiff's case because he fails to support them with appropriately with citations to the record, and he further fails to show how his termination procedure was irregular because he provides no comparator nor cites any unfollowed policy or procedure. *McClure*, 490 F. App'x at 667.

Regarding the notice provided to the committee members, Defendants claim Plaintiff agreed to the hearing's scheduled time. It is unclear whether any objectionable action occurred

20

concerning this timing because neither party cites the record for support. It is notable Plaintiff does not mention whether he agreed to the timing or not in his own briefing, but it is of no consequence because he provides this Court with no reference to the record to support any lack of notification, and what little evidence he provides concerning his failure to receive a hearing from the full committee, Plaintiff does not show this Court how that prejudiced him, would have changed the outcome, or whether it was a departure from normal operations. To be sure, Plaintiff received a hearing from a committee of fellow faculty members, and he was there to make his case before that committee; therefore, this argument is unpersuasive.

Plaintiff's lack of access to his MSU electronic accounts also fails to aid his case because he does not inform the Court of their importance to his case nor does he allege what documents became unavailable to him or how his due process rights suffered because of his lack of access. As for Plaintiff's allegation concerning MSU's general counsel being a "confidential advisor" to the committee members, the Court finds this allegation unpersuasive because Plaintiff does not provide how this actually prejudiced his opportunity for an impartial hearing. He simply assumes foul play, despite testimony from one of the committee members limiting the general counsel's advice to "procedural issues" [155].

The final allegation that Dr. Shaw, Dean Keither, and Isaac Howard "had already planned to terminate" Plaintiff prior to his faculty panel hearing also fails to aid his case [155]. The Court has already discussed the emails Plaintiff cites as support for this allegation, and the Court does not change its opinion of those statements here. When those statements are read in context, they do not lead this Court to find nor would a reasonable jury find any of the Defendants' or any member of the faculty panel's minds were "irrevocably closed before actual adjudication;" that is, the faculty panel hearing. *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1052 (5th Cir. 1997).

Plaintiff cannot claim he was denied due process concerning his termination because he was advised of the cause of his termination, advised of the name and nature of the testimony of those witnesses testifying in the faculty panel hearing, and given a meaningful opportunity to be heard at a qualified and impartial hearing who found cause for his termination [146-6; 147-2]. It is rather telling Plaintiff does not deny this except to unsuccessfully argue the committee's impartiality. As such, no genuine dispute of material fact exists regarding Plaintiff's due process claim, and Defendants are entitled to judgment as a matter of law.

### IV.    Conclusion

For the foregoing reasons, the Court finds Defendants' Motion for Summary Judgment [145] should be granted and all claims against them dismissed.

An order in accordance with this opinion shall issue this day.

THIS the 3rd day of August, 2026.

_____
SENIOR U.S. DISTRICT JUDGE